UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:04-CR-08 |
| | ) | |
| JIMMY C. SCOTT and | ) | |
| CLARA L. SCOTT | ) | |

**O R D E R**

This criminal matter came before the Court for hearing on the defendants' objection to the Report and Recommendation of the United States Magistrate Judge, which recommended the denial of the defendants joint motion to dismiss the indictment. [Doc. 72].

As recognized by the United States Magistrate Judge, the facts are mostly undisputed. Mr. Scott was formerly an employee of the railroad, and was awarded occupational disability from the Railroad Retirement Board as of July 1, 1992 for an on-the-job injury. As a recipient of a disability annuity from the Railroad Retirement Board, Mr. Scott is limited in the amount of wages he can earn from employment. 45 U.S.C. § 231a(e)(4) provides impertinent part:

> No annuity . . . shall be paid . . . with respect to any month in which the individual . . . is paid more than $400.00 in **earnings** . . . from employment or self-employment of any

form. (emphasis added)

The regulation addressing the statutory provision reads almost exactly the same:

> [T]he employee's disability annuity is not payable and the employee must return the annuity payment for any month in which the employee **earns** more than $400.00 . . . in employment or self-employment of any kind.

20 C.F.R. § 220.161 (emphasis added).

Since the mid 1990's, Mr. Scott has been retained on numerous occasions as an expert witness to testify against the railroads in personal injury actions. It is this employment as an expert witness which is the subject of this case. The government, in its indictment, charges the defendant with misrepresenting his true earnings and the nature of his employment as an expert in documents required to be filed to determine Mr. Scott's continuing entitlement to the receipt of railroad disability annuity payments. Thus, Counts 1 through 34 of the indictment charge Mr. and Mrs. Scott with taking part in a scheme to defraud, in an effort to continue to receive railroad disability annuity payments through the United States mail in violation of 18 U.S.C. § 1341. Mr. Scott in Counts 35 through 68 is charged also with converting to his own use, with the aid of Mrs. Scott, monies of the United States to which he was not entitled in violation of 18 U.S.C. § 641. As part of this scheme to defraud, Mr. Scott is also charged with falsifying a form submitted to the Railroad Retirement Board, in which he represented that he had earnings of $350.00 per month, whereas he is

2

charged with having actual knowledge of having had earnings of in excess of $400.00 per month in violation of 18 U.S.C. § 1001. Finally, Mr. Scott is charged with failing and refusing to report and furnish information required of the Railroad Retirement Board concerning his earnings in violation of 45 U.S.C. § 231*l*.

Defendants assert that each and every Count of this indictment hinges upon whether Mr. Scott did in fact have "earnings" in excess of $400.00 per month, and that the Court may determine, as a matter of law, that earnings should be defined in such a way as to require only that Mr. Scott report the amount of wages listed on the IRS W-2 form he received from Scott & Associates, Inc., a subchapter S corporation, which amount he did actually report to the Railroad Retirement Board.[1]

Rather than receiving payments for his expert testimony directly, Mr. Scott's fees were paid to a Subchapter S corporation, which paid him a salary of $350.00 per month. The defendants concede that were Mr. Scott receiving payments directly from the attorneys who retained him to testify in their cases, these monies would be reportable to the Railroad Retirement Board as "earnings," and Mr. Scott

---

[1] A careful review of the superceding indictment leads the Court to the conclusion that the defendants' motion to dismiss, if granted on the definition of earning proposed by the defendants, would only result in the dismissal of Counts 69 and 70 of the indictment, which are the only counts which are premised **solely** on fraudulent conduct involving the failure to report the entire earnings of Mr. Scott.

3

would have been required to have returned to the Railroad Retirement Board his annuity payment, since, admittedly, his monthly earnings would have exceeded $400.00. However, the defendants insist that because Mr. Scott was employed by a S-Corporation the only "earnings" he was required to report to the Railroad Retirement Board were those amounts the corporation reported having paid to him as wages on his W-2 statement.

The corporation by which Mr. Scott was employed was Scott & Associates, Inc., a corporation organized under the laws of Kentucky. The corporation was established in 1995 by Mr. Scott, who served as chairman of the board of directors and as the corporation's president, and by the defendant, Clara Scott, who served as the secretary/treasurer of the corporation, as well as a director of the corporation. Mr. and Mrs. Scott were the only officers at the corporation, and were the sole shareholders, each owning 50% of the stock of the corporation. Shortly after its formation in 1995, Scott & Associates, Inc. advised the Internal Revenue Service that it elected to be treated as a S-corporation. Accordingly, Mr. and Mrs. Scott would enjoy the advantages of a partnership, that is, the corporation's income, losses, deductions, and credits would be attributed to the individual shareholders, thus avoiding the potential for double taxation.

The sole business of Scott & Associates, Inc. was the provision of expert testimony on behalf of plaintiffs against railroads in personal injury suits. Mr. Scott

4

served as the expert, doing field work, reviewing depositions, and testifying in depositions and at trials. Mrs. Scott apparently served in an administrative position with the corporation. The defendants submit that some of Mrs. Scott's work with the corporation was billed to the corporation's clients, but concede that Mr. Scott brought in the lion's share of the corporate income.

As wages, the corporation paid Mr. Scott a monthly salary of $350.00. In addition, the corporation paid a number of personal expenditures on behalf of the Scotts. As an example, the government asserts that the corporation purchased numerous cruise ship vacations for the Scotts which totaled over $20,000.00. Mrs. Scott, though certainly not the lifeblood of the corporation, was paid a nearly twice the monthly salary of Mr. Scott, receiving wages of $650.00 per month. In addition, though they owned their home jointly, from which they ran the corporate office, the corporation paid Mrs. Scott solely a monthly rent for its office space in their home. The corporation then apparently distributed the balance of the corporation's accumulated monies to the Scotts as dividends, not wages, and these were reported to the IRS on Form K-1.

The government insists that the defendants' use of the subchapter S corporation was a subterfuge to conceal Mr. Scott's true earnings, so that he could continue to receive railroad retirement disability annuity payments, and that the monies the corporation received for Mr. Scott's expert witness fees are attributable

5

to Mr. Scott for purposes of determining whether his "earnings" actually exceed $400.00 per month. To state it another way, the government insists that aside from monies attributable to legitimate business expenses, all of the corporation's income may be re-characterized as Mr. Scott's "earnings" for purposes of determining whether Mr. Scott made a material misrepresentation to the Railroad Retirement Board when he stated that his monthly earnings were merely $350.00.

Because neither the statute nor the regulation dealing with a railroad disability annuitant's entitlement to payments defines what constitutes "earnings," the defendants insist that the Court should rely upon Revenue Ruling 59-221 of the Internal Revenue Service which states that a shareholder's proportionate share of the income from a Subchapter S corporation is not net earnings from self-employment. In light of the language of this Revenue Ruling, it is no surprise that the defendants wish to rely upon it rather than Social Security disability rules, through the Social Security statute is significantly analogous to the railroad disability statute. In fact, the defendants concede that "because the standards and rules for determining disability under the Railroad Retirement Act are identical for [sic] those more frequently litigated under the Social Security Act, it is accepted practice to use Social Security cases as precedent for Railroad Retirement cases." Although there are no applicable railroad retirement decisions, there are numerous Social Security cases specifically dealing with what constitutes "earnings," for determining entitlement to disability

6

payments under the Social Security Act.

In the oft cited Social Security case of *Ludeking v. Finch*, 421 F. 2d 499 (8th Cir. 1970) the Court specifically rejected the notion that Revenue Ruling 59-221, which on its face limits its ruling to "Self-Employment Contributions Act Purposes," applies to the definition of "earnings" for purposes of the Social Security Act. In *Ludeking*, the court equates "earnings" with "wages", and permits the recharacterization of dividends of a Subchapter S corporation where the dividends were received in lieu of salary, so as to reflect appropriate compensation for the service to the corporation. Notably, the employee disability benefits brochure which Mr. Scott would have received from the Railroad Retirement Board defines "earnings," as "including wages before payroll deductions, commissions and other payments for work (such as room and board) and net earnings from self-employment."

The rationale of the *Ludeking* case has been adopted by the Sixth Circuit, which held that the Secretary of Health and Human Services has the right to examine the substance over the form of a business transaction and relationship in determining whether to reallocate salaries paid by the corporation, so as to attribute them to the "earnings" of an employee of the S-corporation for purposes of the Social Security Act. *Heer v. Sec. of Health and Human Services*, 670 F. 2d 653, 655 (6th Cir. 1982).

These Social Security cases are consistent with what would have presumably been the opinion of the General Counsel of the Railroad Retirement

7

Board. In opinion L79-103 (March 14, 1979) the Railroad Retirement Board's general counsel responded to an inquiry about whether undistributed taxable income from an S-corporation would be considered "wages" for purposes of determining the "earnings" limitation of the Act. While the opinion finds that the General Counsel was supplied with insufficient facts with which to render a conclusive opinion, the annuitant is cited to *Ludeking* and *Rose v. Richardson*, 348 F. Supp. 164 (S.D. Ohio 1972), aff'd at 493 F. 2d 1406 (6th Cir. 1974) as authority for the recharacterization of undistributed taxable income. In *Rose*, a Social Security case, the court determined that the Secretary properly determined that a corporate entity was created as a sham, and that the wage earner in reality operated his business as a sole proprietorship.

From these cases, the Court concludes that the jury should be permitted to determine whether any portion of the other income of the corporation not paid to Mr. Scott as wages should be recharacterized as wages paid to Mr. Scott as remuneration for services performed. Simply put, the jury may consider all relevant facts in determining whether the salary arrangement employed by the Scotts was simply a sham designed to defraud the government. Some of the relevant considerations might be whether or not the salaries set are arbitrary, whether the defendants support themselves through the earnings of the corporation, whether their responsibilities and time spent are commensurate with their salaries, whether defendant(s) maintain control over the corporation, the true value of Mr. Scott's

8

services to the corporation (for example, whether it is he who possesses the goodwill of the corporation, opens its accounts and secures its business) and whether the corporation could continue to exist without Mr. Scott's services. This case is actually much more simple than defendants would suggest. The jury must simply decide whether or not this salary arrangement was fictitious and done with the intent to defraud the government. Of course, this does not forestall the defense that the defendants made a good faith reliance upon the advice of counsel, or that they relied in good faith upon the Revenue Ruling.

The appropriate place to look for the definition of "earnings" aside, the defendants argue that the railroad annuity statute which they are charged with having violated vis-a-vis the mail fraud and fraud against a federal agency statutes, is unconstitutional and vague in that it does not provide a defendant with sufficient notice of what the statute prohibits. As stated by the Court in *Jordan v. DeGeorge*, 341 U.S. 223, 230, 71 S. Ct. 703 (1951):

> The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct. This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law.

(Citations omitted).

A review of the statute involved leads the Court to the unmistakable conclusion that it is not unconstitutionally vague. The statute clearly states that an

9

annuitant will not be entitled to his disability payment for any month in which his "earnings. . . from employment or self-employment of any form," exceed $400.00. Additionally, the statute requires that the annuitant report "any such payment of earnings for such employment or self-employment."  45 U.S.C. § 231a(e)(4). Defendants essentially argue that the statute is unconstitutionally vague on its face because it does not advise annuitants that they may not rely upon the definition of earnings set forth by the Internal Revenue Service in its Revenue Ruling.  For the reasons set forth hereinabove, the Court disagrees with the notion that reliance on the Revenue Ruling would have been the natural inclination of someone reading the statute.  Contrary to the defendants' position, reliance upon the Revenue Ruling is misplaced, particularly in light of its stated limitation to Self-Employment Contributions Act purposes.  Further, aside from the fact that reliance upon the definition of earnings for Social Security purposes is more appropriate, the statute on its face only limits "earnings" to being applicable to what an annuitant earns from "employment or self-employment."

It is certainly not unusual for a statute to fail to define every term and presume a term will be read with its ordinary meaning, and the court should not exempt conduct covered by the statute where there is no evidence Congress intended to exempt the conduct.  *See In re Wright Entrp.*, 76 Fed. App. 717 (6th Cir. 2003); *U.S. v. Hill*, 55 F. 3d 1197, 1206 (6th Cir. 1995).  From the face of the statute an annuitant

Case 2:04-cr-00008-JRG   Document 83   Filed 02/10/05   Page 10 of 11   PageID #: 202

would be put on notice that if he received "earnings" from employment or self-employment he might forfeit his annuity. The annuitant, absent clear authority, would rely upon the narrow definition of some other federal agency in failing to report compensation received by him at his own peril. This becomes strikingly clear in light of the fact that, under the clear language of the statute, were the annuitant to **not** set up a legal entity for purposes of doing business, and thus be self-employed, all of his received income, other than "disability related work expenses, would be attributable to him for purposes of determining his entitlement to disability annuity payments. Indeed the only limiting factor on the face of the statute to the covered earnings is that the earnings must result from "employment or self-employment." The statute makes no distinction in earnings from employment, be they paid by salary, commission, or in-kind, or be they reported on a schedule K-1, W-2, 1099, etc.

Therefore, the Report and Recommendation of the United States Magistrate Judge is **ADOPTED** and **APPROVED**, and the defendants' joint motion to dismiss is **DENIED.** [Docs. 68 and 39].

ENTER:

                                                s/J. RONNIE GREER
                                        UNITED STATES DISTRICT JUDGE

11

Case 2:04-cr-00008-JRG   Document 83   Filed 02/10/05   Page 11 of 11   PageID #: 203